WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Boyer A. Bracy,<br><br>     Petitioner,<br><br>v.<br><br>Becky Clay,<br><br>     Respondent. | No. CV-13-00128-TUC-FRZ (EJM)<br><br>**ORDER** |

  Pending before the Court is Petitioner Boyer A. Bracy's First Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Action to Compel Performance of Duty Pursuant to 28 U.S.C. § 1361, and Motion to Compel Discovery. (Doc. 8). Petitioner, represented by counsel, challenges the calculation of his time owed by the Federal Bureau of Prisons ("BOP"). Respondent filed an Answer (Doc. 17), and Petitioner filed a Reply (Doc. 20). At the direction of the Court, Respondent also filed a Supplement to the Answer, providing documentation of the dates that Petitioner entered and exited custody and how his time in custody was apportioned among his various sentences. (Doc. 24). For the reasons that follow, the Court will deny the Petition for Writ of Habeas Corpus, and deny as moot the Action to Compel Performance of Duty and Motion to Compel Discovery.

**Factual and Procedural Background**

  On October 4, 1976 Petitioner was sentenced to 15 years imprisonment with a 20 year special parole term for conspiracy to illegally import a controlled substance, illegal

1 importation of a controlled substance, conspiracy to possess a controlled substance with
2 intent to distribute, and possession of a controlled substance with intent to distribute.
3 (Doc. 24 Attachs. 1, 3). On May 17, 1979 Petitioner was sentenced to 10 years plus a 5
4 year special parole term for unlawful distribution of heroin. (Doc. 24 Attach. 2). The
5 judgment specified that the sentence was to run concurrently with the 15 year sentence.
6 *Id*. At this time, Petitioner's full term expiration date was November 23, 1992. (Doc. 24
7 Attach. 3 at 2[1]).

Petitioner was released on parole on November 23, 1982 (Doc. 24 Attach. 4 at 15),
with 3653 days remaining to be served (Doc. 24 Attach. 5 at 17). Petitioner was arrested
on June 20, 1985 for violating parole. (Doc. 24 Attach. 5 at 18).

On August 27 1986, Petitioner escaped from federal prison and was returned to
custody on May 26, 1987. (Doc. 24 Attach. 4 at 14). On January 5, 1988 Petitioner was
sentenced to 2 years for the escape, to run consecutively to his other prison terms. (Doc.
24 Attach. 6 at 20).

On November 17, 1988 Petition was convicted of income tax evasion and
continuing criminal enterprise of possession with intent to distribute cocaine. (Doc. 24
Attach. 7 at 2). Petitioner was sentenced to 10 years imprisonment for the cocaine charge
to run consecutively to his term of imprisonment for the escape charge, and 5 years for
tax evasion to run concurrently with the cocaine charge. *Id*. Respondent contends that
because Petitioner was convicted of committing the above crimes while on parole, "he
was still required to serve his original 3653 days he had remaining at the time he was
paroled in 1982." (Doc. 24 at 2) (*citing* 28 C.F.R. § 2.52(c)(2)). "Therefore, at this point
he had a total of 22 years and 1 day to serve on his aggregate sentence." (Doc. 24 at 2)
(*see* Doc. 24 Attach. 8 at 19).[2]

---

[1] While the declaration of Andrew Roush submitted by Respondent refers to page numbers on the original documents, the Court refers to the page number stamped at the top of each page on CM/ECF.

[2] Sentence calculation: 2 years for escape plus 10 years for the other 1988 convictions plus the 3653 days remaining on his original 15 year term = 22 years and 1 day. The sentence computation data sheet notes that this includes 145 days jail time credit

On November 27, 1998 Petitioner was released on mandatory parole, and had 3381 days remaining on his aggregate sentence. (Doc. 24 Attach. 8 at 20).

On July 19, 2002 a parole violation warrant was issued for Petitioner. (Doc. 24 Attach. 10 at 30).

On November 14, 2002 Petitioner was sentenced to a term of 78 months imprisonment plus 2 years supervised release for use of a communication facility to commit a drug trafficking offense. (Doc. 24 Attach. 9).

A Notice of Action ("NOA") dated May 30, 2007 states that Petitioner consented to a revocation of parole, that he forfeited all time spent on parole, that the July 19, 2002 parole warrant would be executed on June 20, 2007, and that parole would be granted on June 20, 2007 after the service of 61 months in custody. (Doc. 24 Attach. 11). Respondent contends that Petitioner still had 3380 days to serve at this time. (Doc. 24 at 2). Per the declaration of Andrew Roush, at the time of the May 30, 2007 NOA, Petitioner was still serving his 78 month sentence "and he remained in custody under that sentence until it was satisfied on January 16, 2008, and he was released from custody." (Doc. 24 Ex. 1 at 5 ¶ 17) (*citing* Attach. 8 at 6 [CM/ECF 10]).

On January 16, 2008 Petitioner was released on good conduct time. (Doc. 24 Attach. 4 at 10; Attach. 8 at 9).

On February 2, 2012 a parole violation warrant was issued for Petitioner. (Doc. 24 Attach. 12). The warrant indicated that Petitioner had 3380 days remaining to serve. *Id.* Petitioner was taken into custody on August 31, 2012, *id.* at 36, and a preliminary interview was held at USP—Tucson on November 20, 2012 (Doc. 13 at 3). On April 8, 2013 the USPC ordered that Petitioner be released from custody of the warrant. (Doc. 8 Ex. B). The order also stated that Petitioner's parole was terminated effective April 8, 2013, and that he was to begin his 20 year special parole term on April 8, 2013. *Id.* Petitioner was not actually released from USP—Tucson until June 13, 2013 due to delays

---

and 269 days inoperative time while Petitioner was on escape, with a full term sentence expiration date of February 29, 2008.

in approving his proposed release plan. (Doc. 17 at 35). The June 6, 2013 NOA ordering Petitioner's release again noted that his parole was terminated effective April 8, 2013 and that he was to begin the 20 year special parole term that same date. (Doc. 17 at 29).

**Petition Under 28 U.S.C. § 2241**

      A. Jurisdiction

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,' . . . and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (*quoting FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *overruled in part on other grounds by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.,* 541 U.S. 774 (2004)). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Id.* at 864. Therefore, a proper characterization of the petition is necessary to a determination of jurisdiction. *Id.*

Here, Petitioner does not claim that the sentencing court imposed an illegal sentence; rather, he seeks relief with respect to how the time for his 1976 sentence was calculated and when his term of special parole was to begin. As such, Petitioner is challenging the manner, location or condition of the execution of his sentence. *See e.g., Rogers v. United States*, 180 F.3d 349 (1st Cir. 1999) (section 2241 petition is appropriate vehicle to challenge the correctness of a jail-time credit determination, once administrative remedies have been exhausted); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991) (a prisoner's challenge to the "manner in which his sentence was executed . . . [is] maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241."); *Weinstein v. U.S. Parole Comm'n*., 902 F.2d 1451, 1452 (9th Cir. 1990) ("The district court had jurisdiction pursuant to 28 U.S.C. § 2241 to review a claim by a federal prisoner challenging a decision of the United States Parole Commission."). Such a challenge must be brought pursuant to § 2241 in the custodial court. At the time of filing

the Petition, Petitioner was incarcerated at USP—Tucson in Arizona. Accordingly, this Court has jurisdiction over this matter. *Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990).

### B. Exhaustion

The Ninth Circuit Court of Appeals has stated: "[28 U.S.C. § 2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Respondent has not suggested that Petitioner has failed to exhaust his administrative remedies. As such, this Court finds that Petitioner has exhausted his administrative remedies.

### C. Mootness

Respondent argues that the § 2241 petition is moot because Petitioner was released from FCI—Tucson on June 6, 2013 to commence his special parole term. (Doc. 17 at 7). Petitioner contends that his claims are not moot because he is continuing to suffer prejudice from the BOP's miscalculation of his time served because his 20 year special parole term is not due to expire until April 2033. (Doc. 20 at 1–2).

"The Constitution limits the jurisdiction of the federal courts to live cases and controversies, and as such, federal courts may not issue advisory opinions." *Kittel v. Thomas*, 620 F.3d 949, 951 (9th Cir. 2010). An appeal is moot "when, by virtue of an intervening event, a court of appeals cannot grant any effectual relief whatever in favor of the appellant." *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (citation and internal quotation marks omitted). Failure to satisfy Article III's case-or-controversy requirement renders a habeas petition moot. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). "This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (citation and internal quotation marks omitted).

In *Mujahid v. Daniels*, 413 F.3d 991 (9th Cir. 2005), the petitioner challenged the

1  calculation of his good time credits. The court held that the petitioner's commencement
2  of a term of supervised release did not render his habeas petition moot because there was
3  a possibility that the petitioner could receive a reduction in his term of supervised release
4  through lower court action. *Id*. at 995.

5  Similarly, in the present case, Petitioner asserts injury based on the calculated
6  expiration date of his special parole term, and argues that the special parole term should
7  have begun sometime in 2012 rather than on April 8, 2013. The Court finds that
8  Petitioner's § 2241 petition is not moot and is properly before the Court because
9  Petitioner seeks a determination that his special parole term should have begun at an
10 earlier date, and would thus also expire at an earlier date. If the habeas petition were
11 favorably resolved in Petitioner's favor, the alleged time miscalculation by the BOP
12 could be resolved by recalculating the start and end date of Petitioner's special parole
13 term.

14      D. Calculation of Time

15 Petitioner contends that at the time of his parole violation in 2012, he had already
16 completed serving his 15 year sentence imposed in 1976, as well as his subsequent
17 sentences for escape, tax evasion, and continuing criminal enterprise. (Doc. 8–1 at 6).
18 Petitioner therefore concludes that the BOP miscalculated his time in determining that his
19 15 year sentence does not expire until 2016, *id*., and instead argues that because he
20 allegedly finished serving his original sentence in 2012, he should have begun receiving
21 credit towards his 20 year special parole term at some time earlier than April 8, 2013
22 (Doc. 20 at 1–2).

23 Respondent argues that Petitioner still had over 3000 days left to serve in 2012
24 because even though Petitioner was paroled several times, "his sentence never went
25 away" and Petitioner "was required to continue serving the remainder of his sentence
26 every time he received parole because of his subsequent criminal actions." (Doc. 24 at 3).
27 Thus, Respondent contends that Petitioner's "sentence was not abolished until the USPC
28 wiped the board clean on June 6, 2013" and that there has been no miscalculation of the

start date for Petitioner's special parole term. *Id*.

The authority to compute a federal prisoner's sentence is delegated to the Attorney General, who exercises this authority through the BOP. *United States v. Wilson*, 503 U.S. 329, 334–335 (1992) (*citing* 18 U.S.C. § 3621(a) ("A person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed")). Pursuant to 18 U.S.C. § 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."

> If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively . . . Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

18 U.S.C. § 3584(a). Further,

> if a parolee has been convicted of a new offense committed subsequent to his release on parole, which is punishable by any term of imprisonment, detention, or incarceration in any penal facility, forfeiture of time from the date of such release to the date of execution of the warrant is an automatic statutory penalty, and such time shall not be credited to the service of the sentence.

28 C.F.R. § 2.52(c)(2)

The record reflects that the BOP correctly determined the time apportioned to each of Petitioner's sentences and that there are no gaps or unaccounted for periods of time. Contrary to Petitioner's arguments, Petitioner had not completed serving his various sentences at the time of his parole violation in 2012.

When Petitioner was paroled in 1982, he had an undischarged prison term of 3653 days remaining. (Doc. 24 Attach. 5 at 17). Petitioner was later convicted of income tax evasion and possession with intent to distribute cocaine, offenses that he committed while on parole. (Doc. 24 Attach. 7 at 2). Thus, when Petitioner was taken into custody for

- 7 -

1 violating parole, he still had the 3653 days to serve of his original 15 year term, and he
2 was not entitled to credit for the time spent on parole due to the new offenses that he
3 committed while on parole.

4 Petitioner was sentenced to 2 years for escape, to run consecutively to his other
5 prison terms; 10 years for the cocaine charge, to run consecutively to the escape charge;
6 and 5 years for tax evasion to run concurrently with the cocaine charge. (Doc. 24 Attach.
7 6 at 20; Attach. 7 at 2). Thus, at the time Petitioner was sentenced for tax evasion and
8 cocaine possession in 1988, he had a total of 22 years and 1 day to serve: 3653 days (10
9 years and 1 day) on his original 15 year sentence, 10 years for the cocaine charge, and 2
10 years for the escape charge. The 5 year sentence for tax evasion was absorbed by the
11 other sentences.

12 When Petitioner was paroled in 1998, he had served approximately 12 years of his
13 22 year and 1 day sentence, and had an undischarged prison term of 3381 days
14 remaining. (Doc. 24 Attach. 8 at 19–20; Attach. 10 at 30).

15 In 2002, Petitioner was convicted of use of a communication facility to commit a
16 drug trafficking offense and sentenced to 78 months imprisonment. (Doc. 24 Attach. 9).
17 Because the judgment did not specify whether the 78 month term was to run concurrently
18 or consecutively, pursuant to 18 U.S.C. § 3584(a), the 78 month term was consecutive to
19 Petitioner's other sentences. In addition, because this offense was committed while
20 Petitioner was on parole, Petitioner was still required to serve the remaining 3381 days of
21 his 22 year and 1 day term, and he was not entitled to credit for the time spent on parole.

22 On January 16, 2008 Petitioner was released from his 78 month sentence on good
23 conduct time. (Doc. 24 Attach. 4 at 10). However, because the 78 month sentence ran
24 consecutively to Petitioner's 22 year and 1 day term, Petitioner's time in custody from
25 2002 through 2008 was only apportioned to the 78 month term, and Petitioner still had
26 the undischarged time to serve on his aggregate sentence. (Doc. 24 Attach. 8 at 10); *see*
27 *United States v. Wilson*, 503 U.S. 329, 337 (1992) (defendant cannot receive double
28 credit for his detention time). Per the sentence data computation sheets, as of June 20,

2007 Petitioner was credited 1 day of time served on his 22 year and 1 month aggregate sentence and still had 3380 days remaining. (Doc. 24 Attach. 8 at 14–15).

Accordingly, when the parole warrant for Petitioner was issued on February 2, 2012, the warrant correctly indicated that Petitioner still had 3380 days remaining to serve on his aggregate sentence. (Doc. 24 Attach. 12). Thus, the Court finds that the record demonstrates that all time has been properly credited toward Petitioner's various federal sentences, and that Petitioner's 20 year special parole term properly began on April 8, 2013 when Petitioner was released from regular parole. (Doc. 8 Ex. B; Doc. 17 at 29).

## II. Action to Compel Performance of Duty Pursuant to 28 U.S.C. § 1361

In his Amended Petition, Petitioner argued that the Parole Commission should be compelled to perform its duty to hold a parole revocation hearing. (Doc. 8). However, as Respondent notes in the Answer, Petitioner has been released from USP—Tucson and is currently serving a special parole term in South Carolina. (Doc. 17). Petitioner concedes that his action to compel performance of duty has been rendered moot by his release. (Doc. 20 at 2 n. 1). Accordingly, the Court will deny Petitioner's Action to Compel Performance of Duty Pursuant to 28 U.S.C. § 1361 as moot.

## III. Motion to Compel Discovery

The United States Supreme Court has stated that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). The availability of any discovery during a habeas proceeding is within the sound discretion of the court. *Rich v. Calderon*, 187 F.3d 1064, 1068 (9th Cir. 1999). Based on the Supplement submitted by Respondent, the record is sufficient for the Court to address the merits of Petitioner's claims with no need for additional discovery. Accordingly, Petitioner's Motion to Compel Discovery is denied as moot.

## IV. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that:

1) Petitioner's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 8) is **DENIED**;

2) Petitioner's Action to Compel Performance of Duty Pursuant to 28 U.S.C. § 1361 is **DENIED** as moot;

3) Petitioner's Motion to Compel Discovery is **DENIED** as moot;

4) A certificate of appealability is **DENIED**. *See* 28 U.S.C. § 2253. Reasonable jurists would not find the Court's ruling debatable; and

5) The Clerk of the Court shall enter judgment accordingly and close this case.

Dated this 30th day of March, 2016.

Frank R. Zapata
Senior United States District Judge